IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| CLEVELAND A. CURRY, ) | CIVIL ACTION NO. 9:14-3883-BHH-BM |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")[1] on April 27, 2011, alleging disability beginning April 9, 2011, due to a head injury, broken right ankle with hardware, and neck surgery. (See R.pp. 10, 153, 155, 187). Plaintiff's claims were denied both initially and upon reconsideration. Plaintiff then requested a hearing before an

---

[1]Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that she was disabled during the insured period for DIB may still receive SSI benefits if she can establish that she is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005); see also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].



Administrative Law Judge ("ALJ"), which was held on April 30, 2013 (R.pp. 25-64). The ALJ thereafter denied Plaintiff's claims in a decision issued May 9, 2013. (R.pp. 10-20). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-3).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).



The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**Background**

A review of the record shows that Plaintiff, who was thirty-three years old on his alleged disability onset date and thirty-five years old at the time of the ALJ's decision, has a high school education plus two years of college.[2] Plaintiff has past relevant work experience as a fork lift driver, material handler, microcomputer support specialist, infantryman, and office clerk. (R.pp. 18, 31, 33, 153, 188). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[3] of disc herniation and neural foraminal stenosis C5-7 (R.p. 12), he nevertheless retained

---

[2]After his alleged onset date, Plaintiff earned a BA degree in Computer Information Systems with a concentration in networking. (R.p. 33).

[3]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).



the residual functional capacity ("RFC") to perform sedentary work[4] limited to occasional use of foot controls using his right lower extremity; occasional climbing of ramps or stairs; no climbing ladders, ropes, and scaffolds; frequent balancing, stooping, and crawling; frequent left and right overhead reaching; and the need for a sit/stand option that allows alternative sitting and standing positions at will, without leaving the workstation. (R.p. 14). At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work. (R.p. 18). However, the ALJ obtained testimony from a vocational expert ("VE") and found at step five that Plaintiff could perform other jobs existing in significant numbers in the national economy and was therefore not entitled to disability benefits during the period at issue. (R.pp. 18-19).

        Plaintiff asserts that in reaching this decision, the ALJ erred because she failed to explain her findings regarding his RFC as required by SSR 96-8p, failed to properly evaluate his need for an assistive device, failed to comply with SSR 96-9p in specifying the sit/stand option, failed to acknowledge conflicts between the VE's testimony and the Dictionary of Occupational Titles (DOT),[5] and failed to adequately access his credibility. After careful review and consideration of the evidence and arguments presented, the undersigned is constrained to agree with the Plaintiff that the ALJ erred in failing to properly consider and evaluate all of the evidence in making her RFC findings, in

---

[4] Sedentary work is defined as lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

[5] The DOT is "a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy." Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002). "[T]he DOT, in its job definition, represents approximate maximum requirements for each position rather than the range." See Fenton v. Apfel, 149 F.3d 907, 911 (8th Cir. 1998).

4



particular as to Plaintiff's prescribed use of a cane, thereby requiring remand of this case for additional review.

## **Medical Record**

Plaintiff's various impairments were primarily treated at the Department of Veteran's Affairs - Veterans Administration Medical Center in Augusta, Georgia (VAMC).[6] From March 26 to 27, 2009, Plaintiff was admitted to the hospital for treatment of an adjustment disorder with depressed mood and ethanol dependence. (R.pp. 425-428). An MRI of Plaintiff's cervical spine on April 15, 2010, revealed severe stenosis with associated cord flattening. (R.p. 639). Plaintiff underwent a two-level anterior cervical disc fusion at C5-6 and C6-7 on May 3, 2010. (R.pp. 424-425). On July 20, 2010, Plaintiff reported stiffness and weakness in his neck, and physical examination revealed limited range of motion of his cervical spine and objective signs of pain. (R.pp. 439-443). Plaintiff reported pain and tightness in his neck and that he was not responding well to his prescribed muscle relaxant in August 2010, and he was advised not to lift over twenty pounds. (R.pp. 504-506, 590-592). Physical therapy was recommended in September 2010. (R.pp. 585-587).

Plaintiff continued to report pain in October and November 2010, although he had better range of motion. (R.pp. 577-584). On November 8, 2010, Plaintiff reported eye pain after getting hit by a baseball while playing with his son a week before. (R.p. 577). A physical therapy discharge note indicated that by January 7, 2010, Plaintiff (who at the time of initial treatment in September 2010 had complained of an inability to perform activities of daily living due to pain) reported decreased pain and had improved cervical range of motion, flexibility, strength, and posture. (R.pp. 489-490).

---

[6]Unless otherwise referenced, the records cited are treatment notes from the VAMC.



On April 9, 2011 (Plaintiff's alleged onset date of disability), Plaintiff was admitted to the Medical College of Georgia after being involved in a motorcycle accident. Plaintiff suffered a subarachnoid hemorrhage, subdural hemorrhage, cerebral contusion, a temporal skull fracture, and right talus and right metatarsal fractures in this accident. External fixation of his right talus fracture was performed, and Plaintiff was discharged from the hospital on April 16, 2011. (R.pp. 290-292). However, on May 3, 2011 right ankle x-rays revealed a dislocation of Plaintiff's ankle joint and on May 11, 2011, Plaintiff underwent external fixation revision of his right ankle. (R.pp. 274, 285). On July 22, 2011, Plaintiff was examined for complaints of chronic neck pain and for follow up of his recent right ankle fracture. He was advised to keep his leg elevated, if possible. (R.pp. 468, 551, 555). Plaintiff began physical therapy in July 2011 (R.p. 548-550).

On August 10, 2011, Plaintiff reported neck pain, numbness in his shoulders and arms, and a popping sound when he bent his neck forward. (R.p. 461). An x-ray showed degenerative disc disease at the C4-5 level. (R.p. 654). In September 2011, x-rays of Plaintiff's right ankle revealed that his fractures were healed enough to transition to an ankle brace and regular boot, while an MRI of his cervical spine showed canal stenosis and ventral surface cord flattening at C4-C5. (R.p. 458, 516-518). A physical therapist prescribed a cane for Plaintiff on October 3, 2011. (R.pp. 666-667).

On October 5, 2011, a Family Nurse Practitioner at the VAMC completed an "Ankle Conditions Disability Benefits Questionnaire" in conjunction with Plaintiff's application to the VA seeking disability benefits. It was noted that Plaintiff reported decreased range of motion in his ankle and continued swelling and pain, although his right ankle strength was noted to be 4/5. Plaintiff reported he used a brace for his ankle constantly, and used a cane an unspecified (none of the



provided boxes for frequency of use - occasional, regular, or constant was checked) amount of time. (R.pp. 429-439).

Plaintiff underwent anterior cervical diskectomy and fusion at C4-5, as well as removal of the C5-7 anterior plate, on November 22, 2011. (R.pp. 831, 836, 838). On December 8, 2011, Plaintiff reported to a VAMC neurologist that he used a cane and still had pain and numbness in his right ankle. The neurologist noted that Plaintiff's lower extremity reflexes were symmetric and that upon repeat examination sensation was normal, although the muscles on the right lower leg were smaller compared to the left and he had decreased strength of toe flexion and extension and predominately eversion. Nerve conduction studies were reportedly normal, although there was a side to side difference in amplitudes for the peroneal, tibial, sural, and superficial peroneal nerve conduction amplitudes. Because Plaintiff's normal nerve conduction studies were normal and he had only borderline EMG findings, the neurologist noted he was not able to determine the site of the injury, and thought that Plaintiff's muscle atrophy might be due to inactivity. (R.pp. 848-849). On January 4, 2012, Plaintiff reported having trouble swallowing since his last cervical spine surgery, but x-rays showed fusion of Plaintiff's lower cervical spine with no prevertebral soft tissue swelling. (R.pp. 922, 956).

On January 5, 2012, state agency physician Dr. Dale Van Slooten opined that Plaintiff could perform light work[7] with the ability to stand, walk, and sit about six hours in an eight-hour workday; frequently climb ramps and stairs; frequently crawl; occasionally climb ladders, ropes, and

---

[7]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



scaffolds; and frequently reach overhead. He found no limitations as to Plaintiff's ability to balance, stoop, kneel, and crouch. Dr. Van Slooten opined that although Plaintiff's statements as to his limitations were credible, that it was reasonable to expect a full recovery from Plaintiff's surgeries within one (1) year. (R.pp. 106-107).

On February 3, 2012, Plaintiff's podiatrist referred him for physical therapy. Plaintiff declined an offer for a hard plastic ankle foot orthosis brace, stating he had enough muscle function that his injury did not cause foot drop or cause him to fall while walking. (R.pp. 953-954). On February 6, 2012, Plaintiff's neurologist noted that Plaintiff had atrophied calf muscles on the right compared to the left, but with improvement over the previous two months. Nerve conduction studies were again noted to be within normal ranges, although the right lower extremity had lower amplitudes when compared to the left. (R.pp. 938-939) .

On March 19, 2012, state agency physician Dr. Williams Hopkins opined that Plaintiff could occasionally and frequently lift and/or carry ten pounds, and could stand and/or walk two hours and sit six hours in an eight hour workday. He also thought that Plaintiff could occasionally use foot controls with his right lower extremity; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance, stoop, and crawl; and frequently reach overhead bilaterally. Dr. Hopkins further noted that Plaintiff's ability to push and/or pull with his right lower extremity was "limited" and that he "[u]ses cane", but opined that Plaintiff was "capable of effective ambulation w/o". (R.pp. 122-123).

In March 2013, Plaintiff complained of increased pain with walking and weight bearing and a popping noise with heel raises. However, x-rays showed that Plaintiff's talus was restored to near anatomic configuration and  superimposed soft tissues were considered negative. A

8



stirrup brace was ordered. (R.pp. 929-932). In August 2012, Plaintiff reported to his podiatrist that a cortisone injection helped with pain and that he could walk without his cane when the cortisone took effect, but that the shot only lasted two months. The podiatrist administered another cortisone injection. (R.p. 981). On September 26, 2012, Plaintiff was examined to consider removal of his cervical spine plate to alleviate swallowing difficulties. (R. p. 973). On November 2, 2012, it was noted that Plaintiff had a 40% VA disability rating due to degenerative arthritis of his cervical spine (20%) and limited range of motion of his ankle (20%). (R.p. 971).

Plaintiff reported continued ankle pain with swelling in January and February 2013, and that his pain worsened with prolonged standing. (R.pp. 1078, 1084, 1086, 1095). On February 27, 2013, Plaintiff underwent removal of some hardware in his right ankle. (R.p. 1020). By April 17, 2013, it was noted that Plaintiff's wounds were healed and he had relatively painless range of motion of his ankle. (R.pp. 1043-1044).

On April 18, 2013, a neurological examination revealed full motor strength, equal reflexes, and a non-focal sensory examination. (R.p. 1043). The same day, Plaintiff underwent hardware removal from his cervical spine due to his complaints of continued difficulties swallowing. (R.p. 1040).

## Discussion

Plaintiff correctly notes that, in determining his RFC, the ALJ failed to discuss or evaluate the issue of whether his use of a cane was medically necessary, and if so, the effect that this requirement has on his RFC. The Commissioner contends that the ALJ "more than reasonably accounted for Plaintiff's use of a cane when she limited him to sedentary work with postural limitations and a sit/stand option at will". <u>Defendant's Brief</u>, p. 12. However, sedentary work often



requires a certain amount of walking as well as standing; 20 C.F.R. 404.1567(a); and therefore the ALJ's failure to discuss Plaintiff's need to use a cane and whether, or to what extent, this requirement might limit Plaintiff's RFC or his ability to perform the jobs identified by the VE is reversible error. Cf. Moorefield v. Colvin, No. 13-393, 2014 WL 4436322, at * 4 (E.D.N.C. Aug. 18, 2014) [noting VE testimony that sedentary work would be precluded if an individual, while standing, has to hold a cane in one hand and lean on the cane], adopted by 2014 WL 4443290 (E.D.N.C. Sept. 9, 2014). Further, Appendix One (Listing of Impairments) of the regulations provides that "[t]he requirement to use a hand-held assistive device may [] impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling;" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(J)(4); while Social Security Ruling 96-9p, which discusses the implications of an RFC for less than a full range of sedentary work (as found in Plaintiff's case), provides with respect to medically required hand-held assistive devices which aid in walking or standing, that the circumstances for which the device is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information) should be evaluated and that the adjudicator must always consider the particular facts of the case. SSR 96-9p. The ALJ failed to make this required evaluation in this case. Indeed, the ALJ did not make an evaluation of whether Plaintiff needs to use an assistive device *at all*.

   The ALJ noted Plaintiff's ankle surgeries in her decision and that Plaintiff had been prescribed a cane that he was using at the hearing, as well as Plaintiff's testimony regarding his limited ability to ambulate without a cane. (R.p. 15). See also (R.pp. 45-46). However, she then failed to reference or address this issue in her analysis of Plaintiff's limitations or in Plaintiff's RFC, even though there are ample references to Plaintiff's need and/or use of a cane in the medical record.



Plaintiff was initially prescribed a cane in October 2011, following his first ankle surgery. (R.pp. 666-667). An "Ankle Conditions Disability Benefits Questionnaire" completed later that same month noted Plaintiff used both a cane and a brace for his ankle. (R.pp. 429-439). Other medical records noted Plaintiff's "atrophied" calf muscles on the right, and podiatrist records from August 2012 reflect Plaintiff's continued use of a cane to ambulate. (R.p. 981). However, notwithstanding the evidence in the record as to Plaintiff's prescription for, and use of, a cane, the ALJ did not make a finding as to whether Plaintiff's use of a cane was medically required. SSR 96–9p, 1996 WL 374185, at *7 [A hand-held assistive device is "medically required" if "medical documentation establish[es] the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed."]. It may be that the ALJ concluded that Plaintiff did not require the use of a cane; however, if the ALJ determined that Plaintiff's use of a cane was *not* medically required, then it was incumbent on her to explain that decision and why she was rejecting the record evidence reflecting Plaintiff's use of a cane. Cf. Cotter v. Harris, 642 F.2d 700 (3rd Cir. 1981) [listing cases remanded because of ALJ's failure to provide explanation or reason for rejecting or not addressing relevant probative evidence].

Conversely, if the ALJ believed that Plaintiff's use of a cane *was* medically required, then the ALJ needed to discuss and establish how this effected Plaintiff's RFC. Moorefield, 2014 WL 4436332, at * 4 ["[A]n ALJ is required to consider the impact of 'medically required' hand-held assistive devices"]. The Commissioner's argument that the ALJ (at least by inference) concluded that Plaintiff needed to use a cane but then accommodated this need with the functional limitations set forth in the RFC cannot be accepted by this Court when there is no indication in the decision that this is what the ALJ herself either concluded or did. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir.



2001)[Court cannot affirm a decision on a ground that the ALJ did not himself invoke in making the decision]; Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1225 (9th Cir. 2009)["Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."]; Nester v. Astrue, No. 08-2045, 2009 WL 349701 at * 2 (E.D. Feb. 12, 2009)[Noting that the Court "may not consider *post hoc* rationalizations but must evaluate only the reasons and conclusions offered by the ALJ."].

Further, if an ALJ finds that the use of a cane is medically necessary, the ALJ must then determine whether there are jobs that exist in significant numbers in the national economy that Plaintiff can perform while using an assistive device by posing a proper hypothetical to the VE that includes all of Plaintiff's limitations. See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989)[In order for a vocational expert's opinion to be helpful and relevant, it must be "in response to proper hypothetical questions which thoroughly set out all of claimant's impairments"]; Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) [hypothetical question submitted to the VE must state the claimant's impairments with precision]. In this case, not only did the hypotheticals relied on by the ALJ to determine that Plaintiff was able to work not address the issue of Plaintiff's cane use, but in response to the one hypothetical that included a need for an assistive device, the VE testified that "all competitive work would be precluded". (R.p. 62).

Therefore, the ALJ's failure to meet the requirements for evaluating whether Plaintiff required use of an assistive device requires reversal of the decision in this case. Cf. Hamlin v. Colvin, No. 12-3601, 2014 WL 587464, * 13-14 (D.S.C. Jan. 23, 2014 [Reversing decision where there was no discussion by the ALJ as to Plaintiff's use of a cane, such that it was unclear whether the ALJ



12

considered it in determining Plaintiff's RFC, and rendering the court unable "to track the ALJ's reasoning and be assured that all record evidence was considered, and to understand how the ALJ resolved conflicts in the evidence"], adopted by 2014 WL 588073, at * 6 (D.S.C. Feb. 14, 2014). Finally, with respect to Plaintiff's remaining claims of error, on remand the ALJ will be required to consider and re-evaluate the evidence in toto as part of the reconsideration of this claim. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted de novo]).

## Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for a proper evaluation and consideration of Plaintiff's need to use a cane, and for such further administrative action as may be necessary and appropriate. See Shalala v. Schaefer, 509 U.S. 292 (1993).

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

November 12, 2015
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

